# Cochran *v.* Zimmerman, Appellant.

*Landlord and tenant—Leases—Theatre lease—City ordinances—Eviction—Landlord's title—Estoppel—Affidavit of defense—Insufficient averments.*

1. A lessee cannot repudiate his liability under a lease of premises which he had occupied for a number of years, on the ground that title is not vested exclusively in the lessors.

2. In an action for the recovery of rent due under a lease of a theatre building, an affidavit of defense which avers that the lease

had become impossible of performance by reason of the enforcement of certain city ordinances (in force at the time of the execution of the lease), necessitating alterations reducing the size of the theatre; and that the lessors were not the exclusive owners of the premises, was insufficient to prevent judgment, where it appeared that though reduced in capacity, the building was still sufficient for theatrical productions, and where it further appeared that the lessees had been in uninterrupted possession for a period of seven years.

Argued Feb. 29, 1916.    Appeal, No. 247, Jan. T., 1915, by defendants, from judgment of C. P. No. 5, Philadelphia Co., Dec. T., 1913, No. 2791, for plaintiffs for want of a sufficient affidavit of defense in case of Travis Cochran, William Cochran, and William G. Cochran, surviving executors and trustees under the last will and testament of William G. Cochran, deceased, to the use of William G. Cochran, Travis Cochran, and William Cochran, trustees under the will of William G. Cochran, deceased; Travis Cochran; William Cochran; Ann Bond Shober; G. Bond Cochran; Elizabeth C. Ginoux De Fermon; Douglas H. Cochran, Pauline Cochran, The Pennsylvania Company for Insurances on Lives and Granting Annuities, trustee for B. C. Lyon; Edith Cochran and Pauline Cochran, guardian for Dorothy Cochran, v. Samuel F. Nirdlinger and J. Fred Zimmerman, trading as Nixon & Zimmerman.   Before Brown, C. J., Mestrezat, Stewart, Moschzisker and Walling, JJ.   Affirmed.

Assumpsit to recover rent alleged to be due under the lease of a theatre building.

Rule for judgment for want of a sufficient affidavit of defense.

The facts appear in the following opinion by Ralston, J.:

This is an action to recover five installments of rent of $750 each, due December 1, 8, 15, 22 and 29, 1913, a total of $3,750 with interest, for the premises known as

the "Chestnut Street Theatre," on the north side of Chestnut between Twelfth and Thirteenth streets.

On June 16, 1882, by an instrument in writing between William G. Cochran, acting for himself and his wife, Elizabeth Liston Cochran, of the first part, and John H. Haverly, Samuel F. Nirdlinger and J. Fred Zimmerman of the other part, the party of the first part "rents and secures to the party of the second part" the Chestnut Street Theatre for one year from September 1, 1882; the party of the second part agrees to pay "as rent" $18,000 a year in equal weekly installments, and "that the premises shall be used and occupied during the continuance of this lease for operatic, dramatic and musical performances, or intellectual entertainments only and for no other use or purpose whatever." The following provisions show that the parties regarded the instrument as a lease; the party of the second part shall be liable for all damage which may occur "during the continuance of this lease"; if the premises be destroyed by fire the rent shall cease only until the same are repaired, "without prejudice to this lease"; the party of the second part agrees that "at the expiration of the term mentioned in the lease" they will surrender possession; the party of the first part reserves "during the continuance of this lease" the privilege of free admission to the theatre; the party of the second part agrees that scenery put in the theatre "during the continuance of this lease shall at the expiration of said term" become the property of the party of the first part.

William G. Cochran owned one-third of the property, which at his death, July 27, 1883, passed to his sons, Henry, George, Travis and William Cochran, as trustees. His wife owned two-thirds of the property, which at her death, December 30, 1889, passed by her will to her children, Henry, George, Travis, William and Ann Bond Cochran.

On May 24, 1884, "the hereunto annexed lease dated June 16, 1882," was renewed for five years from Septem-

ber 1, 1885, the lessors being Travis, William, Henry and George Cochran, executors and trustees of William G. Cochran, deceased, and Elizabeth Liston Cochran, widow of William G. Cochran, and the lessees being Samuel F. Nirdlinger and J. Fred Zimmerman, trading as Nixon and Zimmerman.

On January 3, 1898, an agreement was executed between Travis, William, Henry and George Cochran, executors and trustees under the will of William G. Cochran, deceased, and in their own-rights, of the one part, and Samuel F. Nirdlinger and J. Fred Zimmerman, trading as Nixon and Zimmerman, of the other part, which recited that "Whereas, William G. Cochran by indenture of lease dated June 16, 1882, did demise and let," &c., "and the said lease" has been extended and renewed for a term which will expire on August 31, 1899; it was covenanted and agreed "that the said lease shall be, and the same is hereby extended and renewed for the further term of seven years from September 1, 1899," with certain changes in its terms.

On March 14, 1906, an agreement was made between Travis, William, George and William G. Cochran, Jr., the remaining executors and trustees under the will of William G. Cochran, deceased, of the one part, and Samuel F. Nirdlinger and J. Fred Zimmerman, trading as Nixon and Zimmerman, of the other part, which recited that "Whereas William G. Cochran by indenture of lease dated June 16, 1882, did demise and let" the property in question "and whereas the said William G. Cochran afterwards departed this life and Samuel F. Nirdlinger and J. Fred Zimmerman, trading as Nixon and Zimmerman, have since become the sole lessees of said demised premises, and the said lease has been by sundry writings duly extended and renewed" it was agreed "that the said lease shall be, and the same is hereby extended and renewed for the further period of nine years from and after the first day of September,

1906, to the first day of September, 1915," with certain modifications.

The defendants contend that since the last mentioned extension agreement was not signed by Ann Bond Cochran (Mrs. Shober), who was entitled to one-fifth of Elizabeth Liston Cochran's interest, nor by Henry Cochran, who was also entitled to one-fifth of Elizabeth Liston Cochran's interest, it is void and not binding on them. The defendants cannot be permitted to question their landlord's title. Having enjoyed the possession of the property under the extension agreement for a period of seven years, they cannot now repudiate the agreement on the ground that title to the premises is not vested in their lessors.

It is further claimed by the defendants that under the agreements referred to, they were not lessees, but obtained only the right to use the premises as licensees under a license revokable at the will of the licensor. An examination of the original agreement and the extensions thereof shows that there is no basis for this contention. The quotations heretofore made show that the plaintiffs occupied the position of landlords, and the defendants were their tenants under a written lease, which was renewed from time to time, and that such was the understanding of the parties for many years.

The affidavit of defense also avers as follows: On December 11, 1906, the defendants, with the consent of the lessors, sublet the premises to "The Chestnut Street Theatre Company," a corporation. On February 19, 1913, the director of public safety notified the Chestnut Street Theatre Company that a license for the exhibition of theatrical entertainments would not be granted until certain changes in the construction of the building were made. On October 3, 1913, the theatre company was notified by the superintendent of police that he would close the theatre in ten days unless steps were taken to make the alterations. On November 13, 1913, the mayor of the city notified the theatre company that

he declined to issue a license, for the reason that the alterations had not been made. The alterations required were, among other things, a partial reconstruction of the front wall, which would necessitate compliance with the ordinance of March 31, 1884, requiring the front wall to be set back to the new line of Chestnut street, a distance of five feet; additional exits from the galleries; a fire wall to protect the dressing rooms from fire on the stage; rear exits from the auditorium; the steps in front of the theatre to be done away with, and an approach by way of an incline to be substituted therefor. The defendants aver that if these alterations were made the space for seats in the theatre would be materially decreased and would not be sufficient in the lower floor to warrant the use of the building as a theatre, and that there would not be sufficient space left upon the stage to give ordinary theatrical performances thereon; that the alterations would cost about $45,000, and if they were made the building would no longer be of any use as a theatre, because of the reduction of the size of the stage, and of the seating capacity of the auditorium.

In consequence of the refusal of the municipal authorities to grant a license the theatre was closed about October 18, 1913, and since that time it has been impossible for the defendants to use the building for operatic, dramatic or musical performances or intellectual entertainments. On December 26, 1913, the defendants tendered to the plaintiffs possession of the theatre, which was refused.

The ordinance of March 31, 1884, provides that it shall not be lawful for any owner to rebuild or alter the front of any building now erected in Chestnut street without making it recede five feet from the old building line, so as to conform to the new line thereby established.

The defendants were in possession of the theatre as lessees from 1882 until 1913, a period of thirty-one years. The last extension of the lease was made in 1906 for a period of nine years. At that time they were familiar

with the condition of the theatre and must have known that the municipal authorities might at any time insist upon changes being made for the protection of the public against fire, and also that if the front of the building were altered, the building would have to be set back five feet in accordance with the ordinance of March 31, 1894.

It is contended that the lease has become impossible of performance by the act of the municipal authorities, and that therefore the tenants are discharged from the payment of rent.

It has been held that whenever a contract, which was legal at the time it was made, becomes illegal by an ordinance of the State, the obligation to perform it is discharged: Baylies v. Fettyplace, 7 Mass. 325 (at page 338). See also: Miss. & Tenn. R. R. Co. v. J. & T. Green, 56 Tenn. 589; Sauner v. Phœnix Insurance Co., 21 Mo. App. 480. In Adler v. Miles, 126 N. Y. Supp. 135, a tenement house was leased for a moving picture show; subsequently an ordinance prohibited the licensing of such shows in tenement houses, so that the premises could not be used for the intended purpose; held that the lessee was discharged from liability for rent. In United Cigar Stores Company v. Friedberg, 57 Pitts. L. J. 357, a basement was leased with but one entrance, which was by steps in an areaway of the sidewalk of the street. Without steps the basement was useless. The city declared the steps a nuisance, and they were removed; held that the tenant was relieved from payment of rent.

A tenant is entitled to compensation where the leased premises are taken under the right of eminent domain and such a taking is not an eviction and does not release the tenant from liability to pay rent: Frost v. Earnest, 4 Whart. 86. But where the entire premises are taken and the lessee is damaged only in the amount of rent which he is obliged to pay, that sum will be awarded to the landlord and the tenant released from his personal obligation: Dyer v. Wightman, 66 Pa. 425. In Uhler

v. Cowen & Murphy, 192 Pa. 443, and 199 Pa. 316, the property leased was a pier used as a freight terminal by a railroad company. The portions of the pier not taken by the city were of no value to the defendants, hence the whole of the demised premises was taken, and it was held that the tenant was released from the payment of rent.

On the other hand, as was said in Barns v. Wilson, 116 Pa. 303 (at page 307), "Titles to real estate are everywhere held subject to such constitutional and legal conditions affecting the enjoyment thereof as shall from time to time be established; all are subject......to such statutory and other police regulations as affect the safety, health and good order of society.......These are not defects in title; they are simply the legal conditions which affect the owner's enjoyment of his own property." Therefore, the removal of a party wall by an adjoining owner, which rendered the leased premises uninhabitable, was held not to constitute such an eviction under a paramount title as would relieve the tenant from the payment of rent. The fact that performance of a contract is rendered more burdensome and expensive by a law enacted after it was entered into does not exonerate a party from its obligations: Baker, et al., v. Johnson & Lazarus, 42 N. Y. 126.

In the present case, the occupancy of the premises was not made impossible by the act of the law, but the tenant was required to make certain alterations for the safety of the public. If these alterations had been made, a license to use the house as a theatre would have been granted. The alterations required were of such a character as to require the front of the building to be set back five feet to comply with the ordinance of March 31, 1884, p. 54. This would be a taking of the five feet by the city and the tenant would be entitled to recover from the city whatever damages he suffered by such taking. The affidavit of defense avers that if the alterations were made the house could not be used as a theatre, because

the seating capacity would be so reduced as to make it unprofitable, and the stage would be too small. This averment is a conclusion from facts stated in the affidavit and is not warranted by the facts, since it appears that while the theatre would be somewhat reduced in size, nevertheless it would be amply sufficient for the purpose of producing theatrical entertainments.

Therefore, it appears that the tenants have not been evicted, that the landlord has broken none of the covenants of the lease, and that while the enjoyment of the premises for the purposes mentioned in the lease has become more burdensome and expensive to the tenant, it has not become impossible.

For the reasons stated, the court is of opinion that the tenants are not released from the payment of rent and therefore the rule should be made absolute.

The court made absolute plaintiff's rule for judgment for want of a sufficient affidavit of defense.    Defendants appealed.

*Error assigned* was the judgment of the court.

*James Gay Gordon* and *Morris Wolf*, with them *Arthur S. Arnold*, for appellants.

*John G. Johnson*, with him *James Wilson Bayard*, for appellee.

PER CURIAM, March 20, 1916:
This judgment is affirmed on the opinion of the learned judge of the court below making the rule for it absolute.