## P. & H. Morton Advertising Co. v. Fink Brewing Co.

*Contracts—Breach—Illegality as defence—Impossibility of performance—Advertising—Beer—Volstead Act.*

1. A brewing company leased from an advertising company certain railroad field bulletin boards at a stipulated monthly rental. The contract required the lessor to paint and maintain the boards in accordance with sketches to be submitted by the lessee. The lessor complied with its part of the contract. The lessee having defaulted in payment of part of the rentals, this action was brought by the lessor to recover the same. The defendant averred that the contract was for advertising beer, and was, therefore, made illegal by the Act of Congress of Oct. 28, 1919 (Volstead Act): *Held*, since the contract contained no reference to the product to be advertised, the lessee could advertise any lawful thing, and the contract was not made unlawful by the Volstead Act.

2. The fact that the operation of the Volstead Act has rendered it impossible for the defendant to derive any benefit or advantage from its contract is not a sufficient defence to avoid judgment on account of admitted default in making payments due under the contract.

3. Defendant must have known of the increasing sentiment against the sale of "beer," and could by stipulation in the contract have protected itself from such a contingency. Having failed to do so, the defence is without merit and the affidavit insufficient to prevent judgment.

*Corporations—Foreign corporations—Failure to register in Pennsylvania—Doing business in Pennsylvania.*

4. A foreign corporation having brought suit to recover moneys alleged to be due upon a contract, an affidavit of defence which avers that the plaintiff company is not registered to do business in Pennsylvania is not sufficient to prevent judgment if it does not set forth the facts which show when, where, how and what business was being conducted.

Motion for judgment for want of a sufficient affidavit of defence. C. P. Dauphin Co., June T., 1921, No. 26.

*Karl E. Richards* and *Hause, Evans & Baker*, for plaintiff.

*Stroh & McCarrell*, for defendant.

WICKERSHAM, J., Oct. 24, 1922.—It appears from the pleadings that on May 1, 1917, the plaintiff entered into a written agreement with the defendant to erect twelve railroad field bulletin boards, to be substantially built in first-class workmanlike manner, with galvanized sheet-steel facing, and so constructed as to have an elevation not exceeding three feet, as indicated in the sketch, and to paint thereon in the best quality of oil and lead, in a workmanlike manner, from a sketch to be submitted to and approved by the defendant, a copy of the sketch which has been approved, and to maintain such boards in good condition on continuous exhibition, and to rent the use of such boards to the defendant for a term of thirty-six months from the average date of completion, for which the defendant agreed to pay the plaintiff an annual rental of $38.40 for each board, payable in regular monthly instalments. It was understood and agreed that if the defendant made default in these payments for three successive months, then the rental for the remainder of the term should at once become due and payable. It was further agreed, by correspondence, that the rental should be increased slightly because of the difficulty of obtaining materials to construct said advertising boards, and because of the advanced price of said material.

The plaintiff complied with its part of the contract. It appears from the pleadings that there was due the plaintiff from the defendant, under said contract, the sum of $1464.40, and that the defendant paid to the plaintiff, under the contract, the sum of $1064.80. It was claimed there was due the plaintiff

from the defendant a balance on said contract of $399.60, together with interest from Feb. 7, 1920, to recover which this suit was brought.

There does not appear to be any difference between the parties regarding the facts in this case. The defendant, in its affidavit of defence, does not allege that the plaintiff has not complied with its contract to procure the ground, erect the railroad field bulletin boards, paint thereon the advertising matter approved by the defendant, and maintain said boards in good condition, as provided in the contract.

Three legal defences are alleged, set forth and urged by the defendant in the affidavit of defence:

1. Because of the enactment by the Congress of the United States of the so-called Volstead Act of Oct. 28, 1919, 41 Stat. at L. 305, it became unlawful, and still remains unlawful, for the plaintiff to maintain its said railroad field bulletin boards advertising "beer," and that it likewise became unlawful, and still remains unlawful, for the defendant to continue to pay to the plaintiff, since the passage and enforcement of said act, the monthly rental for advertising "beer."

2. That since the passage and enforcement of said Volstead Act of Oct. 28, 1919, the defendant has derived no benefit or advantage whatsoever from the said contract.

3. The defendant is informed, believes and avers that the plaintiff is a foreign corporation, organized and existing under the laws of the State of Delaware; that it has not registered in the office of the Secretary of the Commonwealth of Pennsylvania; that it has no fixed or established office or place of business within the said Commonwealth, and that it has no appointed or designated agent or other representative within the Commonwealth, as required by the laws thereof.

In the supplemental affidavit of defence the defendant admits that it owes and is indebted to the plaintiff the rent for the month of January, 1920, amounting to $44.40, and this amount, together with interest thereon, the defendant is ready and willing to pay at any time.

A motion has been made by the plaintiff for judgment for want of a sufficient affidavit of defence, and that brings before us for consideration and examination the several defences set forth by the defendant in its affidavit from which we have quoted.

The defence that the plaintiff is unable to perform the contract because the word "beer," under the said contract, was painted by the said plaintiff with the approval of said defendant, and maintained by it upon all the bulletin boards specified in said contract, and for the use of which the defendant agreed to pay rent, such performance having become unlawful since the passage of said Volstead Act of Oct. 28, 1919, is based upon a false hypothesis, not supported by the pleadings in this case. The plaintiff did not contract with the defendant to advertise "beer." It agreed to "paint in an artistic and workmanlike manner, from a sketch to be submitted to and approved by the first party (defendant), twelve railroad field bulletin boards, size eight by thirty-two feet, and maintain such boards in good condition in continuous exhibition, and to rent the use of such boards to the party of the first part for a term of thirty-six months."

No provision is made in this agreement that the plaintiff shall paint upon the board the word "beer." The plaintiff agreed to paint any sketch approved by the defendant, and to keep said sketch in good condition for a period of thirty-six months. We cannot agree, in the absence of any stipulation to

2 D. & C.

that effect in the written contract between these parties, that the passage of the Volstead Act, making it illegal to advertise beer, relieved the defendant from performing its part of the agreement. The law regards the sanctity of contracts. It requires parties to do what they have agreed to do. If unexpected impediments lie in the way and a loss must ensue, it leaves the loss where the contract places it. If the parties have made no provision for a dispensation, the rule of law gives none. It does not allow a contract fairly made to be annulled, and it does not permit to be interpolated what the parties themselves have not stipulated: Dermott v. Jones, 2 Wall. 1; Cotterel v. Smokeless Fuel Co., 9 L. R. A. (N. S.) 1187.

The courts will not make an agreement for the parties, but will ascertain what they have agreed by what they have said and by the meaning of the words used to express their intention. Where the intention clearly appears from the words used, there is no need to go further, for in such a case the words must govern; or, as it is sometimes said, where there is no doubt, there is no room for construction. Where parties have entered into written engagements with expressed stipulations, it is manifestly not desirable to extend them by implication; the presumption is that, having expressed some, they have expressed all the conditions by which they intend to be bound under that instrument: Clark on Contracts, 591; Broom, Legal Maxims, 8 Am. Ed. 652; Cotterel v. Smokeless Fuel Co., 9 L. R. A. (N. S.) 1187.

By the contract above referred to the plaintiff was bound to furnish advertising boards and to paint thereon an advertisement approved by the defendant. If, during the term of the contract, that advertisement became illegal, then it became the duty of the defendant to furnish some other form of advertisement not forbidden by law, which the plaintiff would have been bound to paint upon said advertising boards. The contract with the plaintiff was not to paint an advertisement of "beer," but to paint such advertisement upon said railroad field bulletin boards which the defendant would approve. If it had been part of the written agreement that, in case the subject-matter of the advertisement originally approved and painted became unlawful, the defendant should then be relieved from the performance of its contract to pay rent, the parties could easily have so stipulated. Having failed to do so, we must conclude that such intention formed no part of the contract. That the parties had in mind a contingent event, which would have the effect of reducing the rental to be paid by the defendant to the plaintiff, appears from the following paragraph of the contract:

"It is understood and agreed that should any sign be destroyed or become so defaced as not to be readable, a *pro rata* amount of service shall be rendered by the second party to the first party on the remaining signs to equalize any time so lost."

There are no other stipulations in the contract relieving, or tending to relieve, the defendant from paying the annual rental for the use of said railroad field bulletin boards, and, therefore, we must assume no others were contemplated.

"Where a party, by his own contract, creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract, and, therefore, if a lessee covenants to repair a house, though it be burned by lightning or thrown down by enemies, yet he is bound to repair it:" Hoy v. Holt, 91 Pa. 88.

We do not consider the second defence set forth in defendant's affidavit of defence, to wit, "since Oct. 28, 1919, the defendant has derived no benefit or

advantage whatever from the said contract," is sufficient to prevent judgment in this case.   What the defendant evidently had in mind was that, because the advertisement of "beer" was forbidden by the Volstead Act, it was excused from further performance of its contract with the plaintiff, because it could no longer obtain a benefit or advantage from advertising "beer;" therefore, it would not use said railroad field bulletin boards for advertising any other commodity which it might thereafter manufacture.   This was a contingency which might well have been considered by the parties to this contract.

"Contingencies not provided against in a written contract usually will not excuse performance thereof.

"The fact that a contract has become more difficult and expensive of performance than was anticipated at the time it was executed is no defence to a suit for the breach thereof:" Com. v. Bader et al., 271 Pa. 308.

A similar defence was urged in the affidavit of defence in Cochran v. Zimmerman, 253 Pa. 155.   It appeared in the report of that case that on Dec. 11, 1906, the defendants sublet the premises to "the Chestnut Street Theatre Company," a corporation.   On Feb. 19, 1913, the Director of Pubilc Safety notified the Chestnut Street Theatre Company that a license for the exhibition of theatrical entertainments would not be granted until certain changes in the construction of the building were made.   The alterations required were, among other things, a partial reconstruction of the front wall, which would necessitate compliance with the Ordinance of March 31, 1884, requiring the front wall to be set back to the new line of Chestnut Street, a distance of five feet.   The defendants averred that if these alterations were made, the space for seats in the theatre would be materially decreased and would not be sufficient in the lower floor to warrant the use of the building as a theatre, and there would not be sufficient space left upon the stage to give ordinary theatrical performances thereon.   In consequence of the refusal of the municipal authorities to grant a license, the theatre was closed, and since that time it was impossible for defendants to use the building for operatic, dramatic or musical performances or intellectual entertainments.   It was contended that the lease became impossible of performance by the act of the municipal authorities, and that, therefore, the tenants were discharged from the payment of rent.   This defence was thoroughly discussed and carefully considered by Judge Ralston, writing the opinion of the court—which was affirmed by the Supreme Court (see page 163), upon the opinion of the court below—in which he reviewed the cases wherein a contract which was legal at the time it was made became illegal by ordinance of the State, whereupon the obligation to perform it was discharged.   After distinguishing the case under consideration from those which he had reviewed, he concluded that the tenant had not been evicted, that the landlord had broken none of the covenants of the lease, and that, while the enjoyment of the premises for the purposes mentioned in the lease had become more burdensome and expensive to the tenant, it had not become impossible.

In Teller v. Boyle, 132 Pa. 56, premises were leased containing a covenant that, under penalty of forfeiture, the lessee would neither occupy nor permit the premises to be occupied otherwise than as a saloon or dwelling without the lessor's written consent to do so.   It was held he was not relieved from liability for rent for failure to obtain a license to sell liquors; and this case was quoted with approval in Hayes v. Goodwin, 253 Pa. 607, 609.

In Lawrence v. White, 131 Ga. 840, 15 Am. & Eng. Ann. Cas. 1097, a suit was brought to recover rent for a property leased as a hotel.   The defence was that an act prohibiting the sale of alcoholic, spirituous, malt or intoxi-

2 D. & C.

cating liquors prevented the use of the bar-room for the purpose of conducting such business. Held, that, in the absence of any provision in the lease for that purpose, the defendant was not entitled to a reduction or proportional abatement of the agreed rental. Judge Lumpkin, writing the opinion of the Supreme Court of Georgia (see page 1099), quoted with approval Teller *v.* Boyle. In a note, beginning page 1103, the reason for the rule is given thus: "The mere fact that the law might cause the tenant to suffer a loss when, without it, he would have made a profit is no more reason to annul the contract on that account, or to allow the tenant to avoid it, than the passage of a law which increased the tenant's profits, and thereby made the lease more valuable, would authorize the landlord to annul the lease, and require a new one under the new law."

This ruling of the Supreme Court of Georgia seems to have been uniformly followed in all the reported cases except one coming from the State of Kentucky.

In Hecht *v.* Acme Coal Co., 34 L. R. A. (N. S.) 773, it was said by Judge Scott, of the Supreme Court of Wyoming: "The question in this case is whether the lessee of a hotel, including a bar-room, was entitled to a reduction or proportional abatement of the agreed rental, because, during the term of the lease, the legislature of the state enacted a law prohibiting the sale of alcoholic, spirituous, malt or intoxicating liquors, and thus the bar could no longer be used for that purpose. The adjudicated cases, with unusual uniformity, answer this question in the negative, though they do not all give the same reasons for the ruling."

Thereupon the learned judge proceeded to review the cases in the several courts of the United States.

While it is true that the last cases quoted relate to the leasing of hotel property, we think the principle is the same. The defendant leased from the plaintiff space upon the advertising bulletin boards. The plaintiff complied with its part of the agreement by erecting the boards as specified in the contract, and by painting thereon the sketch approved by the defendant. Thereafter its only duty was maintenance. It has, therefore, complied with its part of the contract. After the boards were constructed, erected and the sketch painted thereon, nothing remained for it to do but collect the rent from the defendant and keep the boards in the condition specified in the contract. Nothing remained to be done except keep the boards in good order and condition, unless the defendant chose to change the sketch or advertisement which it desired to have painted upon said boards. Having failed to supply or approve of any new sketch when the sketch which it had supplied was forbidden to be advertised by law, it cannot now set up the law as a defence to the payment of the rent. It had not been evicted from the use of said bulletin boards. The plaintiff had broken none of the covenants of the contract, and the further use of said bulletin boards for some other advertising purpose had not become impossible.

The defendant must have known at the time the contract was made that the prohibition sentiment against the advertising and sale of "beer" was increasing from year to year. At the time this contract was made, the sale of intoxicating liquors was prohibited in many of the states of the Union. It would have been quite easy, therefore, for it, the defendant, to have stipulated in the contract that if the advertisement of "beer" was prohibited by law, the defendant would be relieved from the further payment of the rent for the railroad field bulletin boards provided for in this contract. Having failed to do so, we do not consider there is any merit in the first two defences

set forth in the affidavit of defence, nor are we able to conclude that they contain a legal defence to this action.

We come, then, to consider the last defence contained in the defendant's affidavit, that the plaintiff is a foreign corporation, that it is not registered in the office of the Secretary of the Commonwealth of Pennsylvania, that it has no fixed or established office or place of business within the Commonwealth of Pennsylvania, and that it has no appointed or designated agent or other representative within the Commonwealth. The affidavit of defence does not allege that the plaintiff was doing business in Pennsylvania. The affidavit of defence must state that the plaintiff was doing business, or attempting to do business, in Pennsylvania, and it must set forth the facts which show when, where, how and what business was being conducted. Having failed to do so, the allegations are mere legal conclusions, which are fatal and insufficient to prevent judgment: Campbell *v.* Hering, 139 Pa. 473; Meaker Galvanizing Co. *v.* McInnes & Co., 272 Pa. 561-568.

We are of the opinion, therefore, that the affidavit of defence in this case is insufficient to prevent judgment from being entered for want of a sufficient affidavit of defence, and the motion of the plaintiff that judgment be entered for want of a sufficient affidavit of defence is, therefore, made absolute.

From William Jenkins Wilcox, Harrisburg, Pa.