## Reading Co. v. Allied Oil Co., Inc.

*Thomas Raeburn White*, for plaintiff.
*Emanuel Moss*, for defendant.

WINNET, J., October 28, 1943.—This is an action to recover rent under the provisions of a written lease. The affidavit of defense sets up impossibility of performance by operation of law. Defendant pleads an order issued by the Office of Production Management

which prohibited it from using the premises. Plaintiff has asked for judgment alleging the defense to be insufficient.

The lease was executed on March 4, 1941. Under its terms defendant leased certain ground to be used for the storage, sale, and dispensing of petroleum and kindred products. Apparently, a petroleum service station was to be erected by defendant; in clause 17 of the lease defendant undertook to observe strictly all regulations established by Federal, State, or municipal authorities "in the construction, maintenance and operation of the petroleum service station to be erected . . ." Clause 15 of the lease provides:

"If the said lessee is prevented from using the herein demised premises, for the purpose herein named, by any Federal, State or municipal law, rule or regulation now in effect, or hereafter enacted, the lessee shall have the right to terminate this lease by giving to the lessor sixty (60) days' written notice of its intention to cancel the same, in which case this lease shall become null and void at the expiration of such notice."

No notice of termination was ever given by the lessee. The argument of defendant is that conservation order M-68-c, issued by the Priorities Division of the Office of Production Management of the Federal Government, prevented the use of any material for the construction of the service station and rendered the whole lease ineffective and inoperative. The order referred to became effective on January 14, 1942.* Defendant had paid prior instalments and the suit is for the instalments due in May and June of 1942.

---

\* Title 32, National Defense, Chapter IX—Office of Production Management, Subchapter B—Priorities Division, Part 1047—Conservation of Marketing Material for the Oil Industry. Conservation Order M-68-C. Subsection (b):

"Subject to the exception in paragraph (c) hereof, no operator shall order, purchase, accept delivery of, withdraw, secure or use material for construction, reconstruction, expansion, remodeling, replacement, or improvement of facilities used in marketing."

Plaintiff does not question the legality of the administrative order, but contends, first, there was no impossibility of performance, and, second, if there is defendant is subject to the terms of the lease requiring 60 days' notice of termination.

The case brings up the important question of the extent to which an administrative order of a Federal bureau, which interferes with the performance of a contract, may be used as a defense in an action for breach of the contract. The war has to an unprecedented extent made necessary control of industry. These are days of priorities, regulations, restrictions, and prohibitions, and it is difficult to conceive any business or any contract which has not been made more difficult or burdensome. Courts must hesitate in adopting a rule which would hold that a contract that has been made more difficult or burdensome by some administrative order is invalid. Whatever chaos may presently exist through administrative orders would be compounded by such a rule.

We take for granted that the essence of the modern defense of impossibility is that the promised performance was at the making of the contract, or thereafter became, impracticable owing to some extreme or unreasonable difficulty, expense, injury, or loss involved, rather than that it is scientifically or actually impossible. The true distinction is not between difficulty and impossibility: Williston on Contracts, sec. 1931; A. L. I. Restatement of Contracts §454. The questions, therefore, to be answered when the defense of impossibility of performance is set up are: First, what is the nature of the performance; and, second, has it become impossible or unreasonably difficult or burdensome.

What is the performance required of defendant under the lease? He was required to pay rent. Neither the law nor any administrative order has prohibited defendant from observing this performance. If de-

fendant had undertaken to erect a petroleum service station the order complained of might well have been a defense to him in an action for breach. If defendant had undertaken to deliver fuel oil to plaintiff and he could not deliver it because of some priority requirement, again it would be a good defense. It would obviously be a gross injustice of the law to hold a promisor liable for failing to perform the promised act after the law itself prohibited its performance.

"The law never exacts performance of a contract where performance would involve violation of law": Monaca Borough v. Monaca Street Ry. Co., 247 Pa. 242, 247; A. L. I. Restatement of Contracts §458. A striking example of performance prohibited by law is perhaps the Gold Clause Case. When the promisor undertook to pay in gold and it became illegal, it constituted a good defense: Norman v. Baltimore & Ohio R. R. Co., 294 U. S. 240.

If performance has not been made impossible by the unanticipated circumstance, as in this case, then in the *ordinary* contract there may be the further question to what extent has it become unreasonably difficult or burdensome. What shall be the test to be applied in such cases? A typical case involving this question is perhaps The Kronprinzessin Cecilie, 244 U. S. 12 (1917). The court there held that a German ship was excused for failure to deliver a cargo of gold in England by the fact that war was imminent and there was grave danger that such a course would have resulted in the capture of the ship and in the detention of the German crew. Mr. Justice Holmes said (p. 24):

"Business contracts must be construed with business sense, as they naturally would be understood by intelligent men of affairs."

When the performance of a contract has become through an unanticipated circumstance extremely burdensome, involving risks that no sensible business man would subject the promisor to, performance is excused.

Judged by this test there is no such unreasonable difficulty in the present case. The contract was made in March of 1941. It was made in a background of unrest and uncertainty due to the war in Europe and the defense activity in this country. Government interference and regulations were reasonably to be anticipated at that time. In fact the parties themselves stipulated in clause 15 that, if the lessee should be prevented from using the premises by any Federal, State, or municipal order, then it could be terminated within 60 days. This requirement defendant has not observed.

Either in applying Mr. Justice Holmes' business test to the facts of the case or under the literal words of section 458 of the Restatement of Contracts, a further reason appears why defendant cannot avail itself of the defense of impossibility. The Restatement in discussing supervening prohibition or prevention by law says that a contractual duty is discharged in the absence "of contributing fault on the part of the persons subject to the duty". Assuming that defendant contemplated erecting a petroleum station, why was it not done immediately upon the execution of the lease? According to the pleadings, the restriction of the Priority Division did not take place until January 1942. The lease is dated March 1941. The conclusion, therefore, seems inescapable that there was contributing fault on the part of defendant in not erecting the contemplated petroleum station promptly. Businessmen would unquestionably agree on this. And, if conditions were such that it could not do so at the time of or immediately after the execution of the contract, inability to perform must have been a risk defendant assumed. Unprofitability of a contract alone does not afford the defense of impossibility.

In any event, the doctrine of impossibility has no application to rental contracts. The obligation of the tenant to pay rent, unless there is a specific exception in the lease, is absolute, and there is no impossibility

of performance which will excuse him. This has been the law in England and is the law in this Commonwealth.

A case on all fours with the present case is one that arose in England. The doctrine of impossibility is there more frequently referred to as the doctrine of frustration of contracts, a more happy phrase than ours. In Leightons Investment Trust, Ltd., v. Cricklewood Property et al., [1943] 2 All E. R. 97, an action was brought to recover the rent reserved by a building lease for a term of 99 years. Defendants pleaded that it was impossible for them to erect the shops contemplated under the terms of the lease owing to the outbreak of the war and the restrictions placed by the Government. Lord MacKinnon in denying defendants relief from their obligation as tenants to pay rent says (p. 98):

"The doctrine of frustration which was first clearly enunciated in 1863 in Taylor v. Caldwell, 3 B. & S. 826, has been applied to a variety of contracts; but it has never been applied to a demise of real property. Indeed there is clear authority that it cannot."

The authorities cited in the decision are London Estates Co. v. Schlesinger, [1916] 1 K.B. 20, Whitehall Court v. Ettlinger, [1920] 1 K.B. 680, Matthey v. Curling, [1922] 2 A.C. 180, and Swift v. Macbean, [1942] 1 K.B. 375. They involved actions for rent and for the most part the defenses were that the tenants were prohibited because of either Government priority or restriction from occupying the premises. The basis of the decisions seems to rest on the old common-law doctrine that a lessee who has been deprived of possession of the premises, even though there has been a total destruction of same, is not excused for nonpayment of rent in the absence of an express exception: Paradine v. Jane, Aleyn 26 (1647).

The same common-law doctrine is in existence in our Commonwealth. An interesting case came up after

the Revolutionary War. In Pollard v. Shaffer, 1 Dallas 230 (1787), the covenant of the lease required the tenant to pay rent and deliver up the demised premises in good order and repair. In an action for rent and damage defendant pleaded that the British Army had invaded the City of Philadelphia, taken possession of the premises, held the same until the end of the term, and committed waste and destruction. The court held that, although defendant was not liable under the covenant to repair and to deliver the premises in good order and repair, he was required to pay rent.

The authorities are uniform that the obligation to pay rent is an absolute one. Neither the destruction of the premises: The Pennsylvania Co., etc., Trustee, v. Bodek et al., 77 Pa. Superior Ct. 473; Sankey et al. v. Martin & Frisbie, 93 Pa. Superior Ct. 389; nor impossibility of use created by law: Cochran v. Zimmerman, 253 Pa. 155; Nierenberg v. R. C. Maxwell Co., 76 Pa. Superior Ct. 295, will excuse a tenant from paying the rent.

"As a general rule a lessor is not relieved from liability by subsequent developments or changes in the property": Corona Coal & Coke Co. v. Dickinson et al., 261 Pa. 589, syllabus.

A recent case involving Government restrictions and regulations is Robitzek Investing Co., Inc., v. Colonial Beacon Oil Co., 265 App. Div. (N. Y.) 749, decided on April 9, 1943. There defendant resisted payment of rental because he claimed that he could not use the property as a gasoline service station because of Government control of transactions in gasoline, tires, casings, and tubes. The opinion of the court said that the regulations did not restrict the use of the land demised but merely the business of defendant. The case might well have said that the obligation to pay rent is an absolute one. The law has never been and cannot be otherwise.

Tenants must by exceptions in the lease protect themselves from obligations to pay in the event the use of the premises is prohibited or restricted by some law or regulation. Leases are always executed in contemplation of zoning requirements in existence and to be imposed. Public safety may require further restrictions on use of property. We know that our war economy has put great burdens on various businesses. Building and improvements have been restricted. There has been a serious interference with the sale of gasoline and oil. It may even become necessary to prevent its sale altogether. All these are risks which a tenant assumes. The essence of a rental contract is the leasehold which is being created and given to the tenant. The use to which a property is to be put is a condition ordinarily set forth for the protection of the landlord. There has never been an implied warranty that the demised premises are suitable for the use stipulated in the lease: Girard Trust Co., Agent, v. Tremblay Motor Co. et al., 291 Pa. 507; Rosser v. Cusani, 97 Pa. Superior Ct. 255. A tenant cannot set up as a defense that the premises were untenantable: Hitner v. Ege, 23 Pa. 305; Hazlett et al. v. Powell et al., 30 Pa. 293; Reeves v. McComeskey, 168 Pa. 571. In Teller v. Boyle et al., 132 Pa. 56, the lease provided, under penalty of forfeiture, that the lessee would neither occupy nor permit the premises to be occupied otherwise than as a saloon or dwelling without the lessor's written consent to do so. The tenant failed to obtain the necessary license to sell liquor. The court held he was not relieved from the obligation to pay rent. Tenants must protect themselves if they desire to be excused from paying rent because of the danger of being prevented from using the premises by a restrictive law or regulation. In the present case defendant had adequately protected itself in clause 15 and can expect no further relief from the court.

Plaintiff's rule for judgment is made absolute.